IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JERAD MICHAEL ROSS, ) | CASE NO. 7:16CV00222 | |
| Petitioner, ) | | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| LESLIE J. FLEMING, WARDEN, ) | By: Norman K. Moon | |
| WALLENS RIDE STATE PRISON, ) | Senior United States District Judge | |
| Respondent. ) | | |

Jerad M. Ross, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his state confinement, claiming ineffective assistance of counsel, due process violations, and various trial defects. Respondent filed a motion to dismiss Ross's § 2254 petition, and Ross responded, making the matter ripe for disposition. After review of the record, I will grant the motion to dismiss because all but one of claims are procedurally barred, and the remaining claim lacks merit.

**I. Factual & Procedural Background**

Ross was convicted by a jury of first-degree murder, aggravated malicious wounding, and use of a firearm in the commission of an aggravated malicious wounding. He now challenges his convictions in federal court. The facts and procedural history pertinent to Ross's convictions are as follows.

On May 24, 2012, Precious Smith, Traon Jordan, and Ross traveled to a motel in Augusta County. A man named Melvin Jordan owed Smith and Ross money, and was at the motel, so

Traon Jordan dropped Smith and Ross at the front of the motel, where Ross began to argue with Melvin Jordan. After a brief but violent confrontation, Ross shot Melvin Jordan.[1]

Several eyewitnesses testified at Ross's trial. Stacie Swearingen worked across the street from the motel, and she observed two men outside the motel and then heard several gunshots. She witnessed one of the men shoot the other man in the back. The shooter walked away and then was joined by a woman. Swearingen was unable to identify the shooter. James Newman also worked across the street and saw a man with dreadlocks shoot another man five times. He also testified that he saw the shooter walk away from the scene with a woman. Debbie Sprouse was walking her dog near the motel and also witnessed a man with dreadlocks shoot another man five times. She identified Ross in a photo lineup as the shooter; however, she was unable to identify Ross at trial.

Responding to the gunshots, police arrived at the scene and searched for a gunman based on the witnesses' descriptions. Soon after, officers tracked Ross to a wooded area near the motel and apprehended him. Ross's hands tested positive for gunpowder residue, but Ross denied any involvement in the shooting of Melvin Jordan. Instead, he claimed that he was a "nature dude" that had been to a shooting range earlier in the day. While incarcerated, Ross called Smith and threatened both Smith and Traon Jordan regarding their potential testimony against him.

Melvin Jordan was rushed to the hospital and underwent several surgeries and physical therapy; however, the shooting damaged the veins and arteries in his legs, and he was unable to walk unassisted and spent much of his time in bed. On November 27, 2012, he was found dead

---

[1] Traon Jordan had dropped off Smith and Ross and heard gunshots as he was leaving. He immediately parked his car and ran to the front of the motel to determine if Smith, his sister, was injured. Smith testified that she did not see Ross shoot Melvin Jordan because she was looking around to see where Traon Jordan had gone as the altercation between Ross and Melvin Jordan escalated.

2

in his motel room. Dr. Amy Tharpe, a forensic pathologist, opined that Melvin Jordan died of a pulmonary embolism as a result of complications from the gunshot wounds he sustained on May 24, 2012. Dr. Tharpe believed that the probable cause of the clot was the gunshot wounds that Melvin Jordan had received to his legs, which led to an embolism that traveled to his lungs and ultimately killed him. Dr. Tharpe concluded that, but for the gunshot wounds, Melvin Jordan would not have had the blood clots; therefore, Melvin Jordan died as a direct result of the gunshot wounds received from Ross.

The jury convicted Ross of first-degree murder, aggravated malicious wounding, and use of a firearm in the commission of an aggravated malicious wounding; the trial court sentenced Ross to fifty-eight years in prison.

Ross appealed his convictions to the Court of Appeals of Virginia, which denied his appeal on April 10, 2014. On October 30, 2014, a three-judge panel denied his petition for rehearing. Ross appealed again, but on May 15, 2015, the Supreme Court of Virginia denied review. Ross never filed a petition for a writ of habeas corpus in any state court.

Ross filed the current federal petition for a writ of habeas corpus on May 12, 2016, asserting twenty-three claims:

- 1–3. Ross was denied a fair trial by an impartial jury, in that three jurors sat who should have been struck for cause.
- 4–6. Counsel was ineffective for failing to strike three prospective jurors.
- 7. Counsel was ineffective for failing to *voir dire* a prospective juror regarding her knowledge of the case from local media reports.
- 8. Ross's right to confront witnesses was violated by the introduction of text messages from Ross's associate, Tom Jefferson.

3

9. Counsel was ineffective for failing to object to the introduction of text messages from Jefferson.

10. Ross's right to confront witnesses was violated by the introduction of text messages from James Chisely.

11. Counsel was ineffective for failing to object to the introduction of text messages from James Chisely.

12. Ross's right to confront witnesses was violated by the introduction of text messages from Robyn Reed.

13. Counsel was ineffective for failing to object to the introduction of text messages from Robyn Reed.

14. Counsel was ineffective for failing to present any of Ross's witnesses at trial.

15. Counsel was ineffective for failing to obtain an expert medical examiner.

16. Counsel was ineffective for telling the jury that bias is a good thing.

17. Counsel was ineffective for failing to inquire about the motivation of the prosecutor's witnesses.

18. Counsel was ineffective for failing to make a relevance objection to the prosecution's evidence of Ross's gang affiliations.

19. (a) Ross was denied a fair trial when the prosecution introduced and argued false evidence and (b) counsel was ineffective for failing to object to the evidence and argument.

20. Ross's due process rights were violated when the prosecutor made several inflammatory remarks during closing argument.

21. (a) Ross's due process rights were violated when the Commonwealth argued false evidence on appeal and (b) appellate counsel was ineffective for failing to object to such evidence.

22. Counsel was ineffective for failing to present evidence of phone conversations between Ross and a witness for the prosecution where such evidence would have been exculpatory.

23. Ross's due process rights were violated when the trial court failed to grant Ross's motion to strike as to the murder charge.

Ross raised only Claim 23 on direct appeal; the first twenty-two claims were never presented to any state court.

## II. Standard of Review

### A. Procedural Standard

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court," provided that the "the petitioner can demonstrate cause and prejudice for the default." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)).

5

To show cause and/or avoid procedural default, Ross has cited *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Schlup v. Delo*, 513 U.S. 298 (1995). For *Martinez* to apply, ineffective assistance of counsel (or no counsel) must have occurred in the initial state collateral review proceeding. *See Martinez*, 566 U.S. at 13–15; *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013). For *Schlup* to apply, the petitioner must proffer "a compelling showing of actual innocence [which] enables a federal court to consider the merits of a petitioner's otherwise defaulted claim." *Teleguz v. Zook*, 806 F.3d 803, 807 (4th Cir. 2015) (citation omitted).

### B. Merits Standard

To obtain federal habeas relief, Ross must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 403–13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (omitting internal quotations).

Additionally, to state a constitutional claim for ineffective assistance, Ross must satisfy the two-prong *Strickland v. Washington* test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686–

6

687 (1984). A petitioner must overcome "a strong presumption" that counsel's tactical decisions during the representation were reasonably competent, and the court may adjudge counsel's performance deficient only when a petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 689–90.[2]

### III. Analysis

#### *A. Claims 1–22*

Ross has failed to exhaust claims 1 through 22 because they were not presented to any state court, and it is now too late to do so. *See* Va. Code § 8.01-654(A)(2); Va. Sup. Ct. R. 5A:12. Under *Baker*, Ross's claims 1 through 22 are therefore simultaneously exhausted and defaulted. Ross has failed to demonstrate cause, prejudice, or a miscarriage of justice justifying his default; therefore, the merits of claims 1 through 22 are procedurally barred from federal review.

Further, *Martinez* and *Schlup* do not excuse Ross's procedural default. *Martinez* may have applied if errors had been made in Ross's initial state collateral proceeding; however, Ross failed to file any state habeas petition. *Martinez* cannot excuse nonexistent errors in a proceeding which never occurred. Any potential ineffective assistance during his direct appeal would not have led to procedural default because he could have raised the issue on state habeas, which he failed to do. Second, Ross has not alleged a colorable claim of actual innocence because he has failed to produce compelling new evidence of innocence; therefore, *Schlup* does not apply to allow federal review of his claims.

---

[2] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

## B. Claim 23

In Claim 23, Ross alleges that his due process rights were violated when the trial court failed to grant his motion to strike as to the murder charge. Since Ross raised this issue in the state courts, the claim is exhausted and not defaulted. *See Baker v. Corcoran*, 220 F.3d at 288.

In Ross's direct appeal, the Court of Appeals of Virginia squarely addressed Claim 23: "The trial court correctly permitted the issue to be submitted to the jury and, thus, did not err in denying the appellant's motions to strike. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty . . . ." *Ross v. Commonwealth*, No. 1650-13-3, at 4 (Va. App. Ct. Apr. 10, 2014). I agree with the appellate court's conclusions. Three eyewitnesses testified consistently that two men were arguing in front of a hotel and that one man shot the other. After the gunshot, the shooter was joined by a woman, and the shooter walked away with the woman. The woman was Precious Smith, who bolstered the eyewitnesses' statements by testifying that she walked away with Ross after Ross shot Melvin Jordan. Smith also testified that she heard the gunshot, and that Ross did the shooting, but she did not actually witness Ross pull the trigger. Additionally, Smith stated that Melvin Jordan owed Ross and/or Smith money, and that Ross had a serious dispute with Melvin Jordan immediately upon arrival at the hotel: Melvin Jordan had threatened Ross with a weed-whacker. Also, after capturing Ross, police tested Ross and discovered that his hands had gunpowder residue on them.

Melvin Jordan died from a pulmonary embolism several months later. However, expert testimony established that Melvin Jordan's death was a direct result of his being shot by Ross. Since there was sufficient evidence that Ross shot Melvin Jordan, and that Melvin Jordan died as a result of that injury, the trial court did not err by allowing the issue to go to the jury. The state

8

court conclusion is not an unreasonable application of federal law nor based on an unreasonable determination of facts; therefore, I grant the motion to dismiss as to Claim 23.

### IV. Conclusion

For the reasons stated, the court will **GRANT** the motion to dismiss. All but one of the claims are unexhausted and defaulted, *Martinez* and *Schlup* do not apply to excuse their procedural default, and the remaining claim is without merit. An appropriate order will issue.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to Ross and to counsel of record for Respondent. Further, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability will be **DENIED**.

**ENTER:** This  10th  day of March, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE